**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KRISTEN A.,**[1]<br>**Plaintiff,**<br>**v.**<br>**COMMISSIONER OF SOCIAL SECURITY,**<br>**Defendant.** | **Case No. 24–cv–11343–ESK**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff Kristen A.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying plaintiff's application for Social Security Disability Insurance Benefits (ECF No. 4–2 pp. 2, 11–22). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

## I. BACKGROUND

Because the record is voluminous, I set forth only the facts necessary for context and relevant to the issues on appeal.

On June 19, 2023, plaintiff filed an application for benefits and supplemental security income. (*Id.* p. 11.) The application was denied initially on August 15, 2023 and on reconsideration on November 29, 2023. (*Id.*) An Administrative Law Judge (ALJ) held a hearing on June 13, 2024, at which plaintiff and a vocational expert testified. (*Id.* pp. 11, 34–63.) On

[1] Due to the significant privacy concerns in Social Security cases, any nongovernmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

August 19, 2024, the ALJ issued a decision unfavorable to plaintiff, concluding that she was not disabled within the meaning of the Social Security Act. (*Id.* pp. 16–25.) On November 18, 2024, the Appeals Council denied plaintiff's request for review (*id.* pp. 2–6), making the August 2024 decision the Commissioner's final decision.

## II. LEGAL STANDARD

### A. Standard Governing Benefits

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [the claimant] is, [the claimant] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [the claimant] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [the claimant] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations" [(Listings)]. *Smith*, 631 F.3d at 634. If the claimant's impairments do, [the

> claimant] is disabled. 20 C.F.R. §§404.1520(a)(4)(iii), 416.920(a)(4)(iii). If [the claimant does] not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether he can perform his [or her] "past relevant work." *Id.* §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). If the claimant can perform … past relevant work despite [the claimant's] limitations, [the claimant] is not disabled. *Id.* §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [the claimant] cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience." *Id.* §§404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [the claimant] is not disabled. 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v). If [the claimant] cannot, [the claimant] is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### B. Standard of Review

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). Factual findings, "if supported by substantial evidence, shall be conclusive." *Id.*; *see also Appau v. Comm'r Soc. Sec.*, 847 F. App'x 149, 151 (3d Cir. 2021) ("Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005))). Review of an ALJ's decision "is

highly deferential" and "[t]he substantial-evidence threshold 'is not high.'" *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 687 (3d Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Substantial evidence 'means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Id.* (quoting *Biestek*, 587 U.S. at 103). Courts are bound by an ALJ's findings so long as they are supported by substantial evidence even if the court would have decided the matter differently. *See Taylor v. Comm'r of Soc. Sec.*, 826 F. App'x 224, 226 (3d Cir. 2020).

An ALJ must sufficiently develop the record and explain findings in order to permit meaningful review when the decision is read as a whole. *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021). In so doing, an ALJ need not use any particular language or format. *Id.* Though there is deference afforded to the ALJ's evaluation of evidence, witnesses, and expert opinions, "remand is necessary 'where we cannot ascertain whether the ALJ truly considered competing evidence, and whether a [plaintiff's] conditions, individually and collectively, impacted' his ability to work." *Grier v. Comm'r Soc. Sec.*, 822 F. App'x 166, 170 (3d Cir. 2020) (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)).

## III. THE ALJ DECISION

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity. (ECF No. 4–2 p. 14.)

At step two, the ALJ determined that plaintiff had the following severe impairments: posttraumatic stress disorder (PTSD); depressive disorder; and anxiety disorder. (*Id.*)

At step three, the ALJ considered various Listings and determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of any of the impairments listed by the

regulations. (*Id.* pp. 14–16.) Specifically, the ALJ determined that plaintiff's mental impairments did not satisfy the paragraph B criteria for having a "marked" mental impairment. (*Id.* pp. 14, 15.) Based on the totality of the evidence, the ALJ found that plaintiff had mild limitations in "understanding, remembering, or applying information" and "adapting or managing oneself," and moderate limitations in "interacting with others" and "concentrating, persisting, or maintaining pace." (*Id.*) The ALJ then determined the paragraph C criteria, that an individual "has only marginal adjustment" to changes in his environment, were not met. (*Id.* pp. 15, 16.)

At step four, the ALJ concluded that while plaintiff no longer had the RFC to resume her past relevant work as a sheriff officer, she had the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. (*Id.* pp. 16–20.) The limitations included: "occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; have no interaction with the public; and only occasional interaction with co-workers and supervisors." (*Id.*) Upon summarizing plaintiff's testimony, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* p. 17.) For example, the ALJ noted that while plaintiff spends most days at home, plaintiff's testimony about taking her medication, preparing meals, assisting in the care of her two young children, doing laundry, shopping online, and texting friends, demonstrates that plaintiff "engaged in a somewhat normal level of daily activity and interactions." (*Id.* p. 18.) Furthermore, "the record documents that she attend[ed] to her treatment and during her follow up visits[,] she [was] engaged and communicate[d] appropriately with providers," having presented as oriented, well appearing, and logical. (*Id.* pp. 15, 18.)

At step five, the ALJ considered plaintiff's background, RFC, and vocational expert testimony to determine that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* p. 22.) These jobs consist of sandwich maker, marker, and mail sorter. (*Id.* p. 21.) Accordingly, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.

## IV. DISCUSSION

Plaintiff raises three main challenges to the ALJ's decision. (ECF No. 5 (Mov. Br.) p. 12.) First, plaintiff argues that the ALJ's step three determination that her severe mental impairments do not establish a medical equivalence is not supported by substantial evidence. (*Id.* pp. 15–21.) Next, plaintiff contends that the ALJ's RFC assessment fails to clearly account for the disability rating made by the Department of Veterans Affairs (VA). (*Id.* pp. 21–27.) Lastly, plaintiff argues that the ALJ's step five analysis was deficient because the vocational expert's testimony was predicated on the ALJ's faulty RFC assessment. (*Id.* pp. 28–30.) The Commissioner filed an opposition brief (ECF No. 7), in response to which, plaintiff filed a reply brief (ECF No. 8).

### A. Step Three

Plaintiff argues that the ALJ's evaluation of the paragraph B criteria failed to utilize the considerations called for in the regulations. (*Id.* pp. 15–21) Plaintiff takes issue with how the ALJ determined that there was a moderate impairment, rather than marked. (*Id.* p. 17.) Instead of considering how the regulations define these criteria and the scale for assessing a limitation, plaintiff asserts that the ALJ's conclusion was incorrect. (*Id.*)

"Listings 12.04, 12.06, and 12.15 provide multiple ways to demonstrate the existence of a severe mental impairment based on satisfying certain criteria." *Ramazan v. Dudek*, No. 24–06138, 2025 WL 1720409, at *10 (D.N.J.

June 20, 2025). "Each of these listings have requirements listed in paragraphs A, B, and C." *Id.* "The listings may be satisfied by the applicant meeting the criteria in both paragraphs A and B, or A and C." *Id.* "Paragraph B for the three listings is the same and requires showing the applicant has an '[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information. 2. Interact with others. 3. Concentrate, persist, or maintain pace. 4. Adapt or manage oneself.'" *Id.* (alteration in original) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1 §§12.04(b), 12.06(b), 12.15(b)). "A limitation is marked when the claimant is seriously limited in his or her ability to function independently, appropriately, effectively, and on a sustained basis in an area; an 'extreme' limitation means the claimant is not able to function independently, appropriately, effectively, and on a sustained basis in this area." *Id.* (internal quotations omitted).

When concluding that claimants are not disabled under the step three analysis, conclusory statements are insufficient. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). Instead, ALJs must "set forth the reasons for [their] decisions." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). The ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis ... [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This standard is satisfied when an ALJ "clearly evaluat[es] the available medical evidence in the record and then set[s] forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005). "An ALJ's decision on step three need not address every minor piece of medical evidence in the record but need only show a meaningful consideration of the elements of the listings, and whether the weight of medical evidence

presented shows [that the] [p]laintiff meets these elements." *Ramazan*, 2025 WL 1720409, at *11. So long as the relevant medical evidence was considered when evaluating whether the claimant met the specific medical requirements of the listings, the ALJ's decision will likely be upheld. *Id.*; *Parrotta v. Kijakazi*, No. 21–13602, 2022 WL 2289554, at *9–11 (D.N.J. June 24, 2022); *Rivera v. Saul*, No. 20–05308, 2021 WL 5122075, at *9–10 (D.N.J. Nov. 4, 2021); *Dance v. Comm'r of Soc. Sec.*, No. 20–03141, 2021 WL 3144696, at *4–5 (D.N.J. July 26, 2021). "An ALJ is entitled to focus on the evidence they deem most probative, and '[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.'" *Ramazan*, No. 24–06138, 2025 WL 1720409, at *11 (alteration in original) (quoting *Frederick F. v. Comm'r of Soc. Sec.*, No. 20–11500, 2022 WL 445538, at *2 (D.N.J. Feb. 14, 2022)).

Of note, "[f]or a claimant to show that his [or her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* In other words, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* (quoting Social Security Ruling ("SSR") 83–19, Dep't of Health & Human Servs. Rulings 90, 91–92 (Jan. 1983)).

I find that the ALJ's step three determination is supported by substantial evidence. The ALJ considered the evidence in the record to conclude that plaintiff had only mild or moderate paragraph B limitations. The ALJ separately addressed each of the paragraph B criteria by drawing on plaintiff's own testimony, the Function Report, and medical reports. (ECF No. 4–2 pp. 14–16.) Plaintiff suggests that the ALJ gave great weight to the fact that plaintiff successfully communicates with her doctors and ignored that she

largely isolates herself and does not travel to see her children in school activities or greet her food delivery person. (Mov. Br. pp. 17, 18.) The ALJ, however, specifically balanced these facts with the totality of the evidence to determine that although plaintiff does have certain limitations, she is able to function sufficiently. (ECF No. 4–2 pp. 14–16.) While plaintiff also takes issue with the ALJ's alleged failure to address VA's disability rating (Mov. Br. pp. 18, 19), the ALJ was not required to provide any analysis in the decision about how such evidence was considered. 20 C.F.R. §§ 404.1520b(c), 416.920b(c). The ALJ acknowledged the VA's determination as to plaintiff's disability and noted that the evidence the VA considered, was also considered here. (ECF No. 4–2 p. 20.) Given that a reviewing court "must not substitute [its] own judgment for that of the fact finder," I find plaintiff's argument to be without merit. *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014.)

**B. <u>RFC</u>**

Plaintiff next argues that the ALJ's findings as to the RFC are not supported by substantial evidence because the ALJ failed to consider the VA's determination. (Mov. Br. pp. 21–27.) While plaintiff concedes that the VA rating of 100% disability is not binding, she argues that the ALJ should have better considered the underlying evidence from the VA physicians and reviewers. (*Id.* p. 25.) Plaintiff asserts "that evidence of treatment at the VA is virtually the entire medical record in this case" and that "medical evidence must be considered under 20 CFR §404.1513." (*Id.* p. 23.)

"To assess the RFC, the ALJ must consider all relevant evidence from the record, which includes statements from medical sources and the claimant's own description of her limitations." *Morel v. Colvin*, No. 14–02934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016). "The RFC assessment must be supported by a clear statement of the facts upon which the finding is based." *Id.* "If a claimant's symptoms "suggest a greater functional restriction than is

demonstrated by the objective evidence alone, the Commissioner considers evidence such as the claimant's statements, daily activities, duration and frequency of pain, medication, and treatment." *Id.* (quoting *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 111 (3d Cir. 2006)). "The claimant need not be pain-free to be found 'not disabled' especially when her work issue requires a lower exertional level." *Id.*

"Although the ALJ is required to consider the [p]laintiff's subjective complaints of pain, the ALJ may reject these complaints when they are inconsistent with objective medical evidence in the record." *Id.* "The Third Circuit recognizes the 'acute need for some explanation by the ALJ when he has received relevant evidence or when there is conflicting probative evidence in the record.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). "The ALJ has discretion to evaluate [a plaintiff's] credibility and arrive at an independent judgment in regards to the true extent of the pain alleged given medical findings and other evidence." *Id.* "[I]f the ALJ determines that the testimony is not credible, he must indicate the basis for his conclusion." *Id.* "Courts will defer to the ALJ's credibility determination because the ALJ had the opportunity to assess the witness' demeanor at a hearing." *Id.* "The substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings." *Id.* (quoting *Volage v. Astrue*, No. 11–04413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012)).

At first, plaintiff argues that the ALJ failed to "properly," mention the VA's disability rating. (Mov. Br. p. 25.) Plaintiff then argues that the agency regulation providing that ALJs will not discuss VA disability ratings "are not consistent with the Social Security Act." (*Id.* p. 27.) These arguments, which are contradictory to one another, are meritless. Plaintiff offers no evidence in support of her position. Instead, I find that when assessing plaintiff's RFC, the ALJ thoroughly discussed plaintiff's medical history, self-reported

limitations and abilities, testimony, and medical reports. (ECF No. 4–2 pp. 16–20.) The ALJ provided a detailed summary of plaintiff's limitations and medical records and discussed in detail the opinions of her medical providers. (*Id.*) To the extent plaintiff takes issue with plaintiff not having given the VA disability rating proper weight as a medical opinion (*see* Mov. Br. p. 25), an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), [] including those from [the plaintiff's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead of assigning weight to medical opinions, the ALJ considers the persuasiveness of a medical opinion or finding. *Id.* Consistent with this regulation, the ALJ did just that. *See Wellington v. Kijakazi*, No. 22–05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record."); *Jose v. Kijakazi*, No. 19–19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) (finding that the ALJ's discussion of the objective medical evidence "indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record'").

### C. Step Five

Plaintiff's final challenge is to the ALJ's step five analysis. Plaintiff argues that because the ALJ's RFC analysis was deficient, the ALJ's corresponding finding that plaintiff could perform other work cannot be sustained. (Mov. Br. pp. 28–30.) Specifically, plaintiff takes issue with the ALJ having presented the vocational expert with a hypothetical predicated on the ALJ's faulty RFC determination. (*Id.*) Plaintiff argues that all of the jobs identified by the vocational expert fall outside the RFC because she is unable to interact with supervisors and co-workers on a level necessary to maintain competitive employment. (*Id.*) In support of her position, plaintiff cites to

SSR 85-15, which provides that to do unskilled work, a plaintiff must have "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, Dept. of Health and Human Services (Jan. 1985).

Plaintiff's argument is meritless. As a preliminary matter, since plaintiff did not object to the vocational expert's testimony during the hearing, any objection raised now is untimely. *Dionisio v. Comm'r of Soc. Sec.*, No. 23-22067, 2025 WL 428557, at *5 (D.N.J. Feb. 7, 2025). However, even if the challenge was timely, "courts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public." *Rebecca v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (quoting *Torres v. Comm'r of Soc. Sec.*, No. 14–06178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015)). Every job identified by the vocational expert indicated that interacting with people was not significant. *See Sandwich Maker*, DOT: 317.664-010, 1991 WL 672749; *Marker*, DOT 209.587-034, 1991 WL 671802; *Mail Sorter*, DOT: 209.687-026, 1991 WL 671813.

## V. CONCLUSION

For the reasons stated above, the Commissioner's decision denying plaintiff's application for benefits is **AFFIRMED**.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: December 8, 2025